# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| TIMOTHY A. BALDWIN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 5:12-CV-48 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Timothy Baldwin ("Baldwin") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Baldwin's motion for summary judgment, Dkt. No. 10, and **GRANTING** the Commissioner's motion for summary judgment. Dkt. No. 12.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support

the Commissioner's conclusion that Baldwin failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Baldwin bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Baldwin was born on August 6, 1963, Administrative Record, hereinafter "R." 21, and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Baldwin was insured through December 31, 2012; R. 11; therefore he must show that his disability began before the end of his insurance period, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). Baldwin began, but did not complete, the eighth grade and he has not received his GED. R. 48. Baldwin's past relevant work is as a truck driver, which is semi-skilled medium work, occasionally performed at the heavy exertion level. R. 61.

Baldwin reported that during the relevant period, he had the capacity to walk to his mailbox to get his mail and newspaper; mow the lawn with a riding mower, though he needs a break when halfway completed; and feed and care for his pets. R. 244-46. He also reported that he could make some simple meals, including microwave dinners, sandwiches, and hamburgers. R. 40-41, 182.

## Claim History

Baldwin protectively filed for DIB on March 6, 2009, claiming that his disability began on October 9, 2008, due to problems with degenerative disc disease in his lumbar spine. R. 146, 34. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 81, 93. On May 21, 2010, ALJ Mark A. O'Hara held a hearing to consider Baldwin's disability claim. R. 29. Baldwin was represented by an attorney, Jason Ransom, at the hearing, which included testimony from Baldwin and vocational expert Adina Leviton. R. 28.

On June 24, 2010, the ALJ entered his decision denying Baldwin's claims for DIB benefits. R. 23. The ALJ found that Baldwin's obesity and degenerative disc disease in the lumbar spine were severe impairments, but neither rose to listing-level severity. R. 13-14. Considering these impairments, the ALJ found that Baldwin retained the RFC to perform light work, including sitting and standing for about six hours in an eight-hour workday. R. 14-15. The ALJ determined that Baldwin could not return to his past relevant work as a truck driver, R. 31, but that Baldwin could work at jobs that exist in significant numbers in the national economy: namely router, mail clerk, and assembler. R. 22. Thus, the ALJ concluded that he was not disabled. R. 22-23. On March 9, 2012, the Appeals Council denied Baldwin's request for review, R. 1-4, and this appeal followed.

## ANALYSIS

Baldwin alleges that the ALJ erred by 1) not giving proper weight to the opinion of his treating physician, Robert Kime, III., M.D.; 2) improperly evaluating his complaints of pain; and 3) incorrectly assessing his credibility.[1]

---

[1] Baldwin asserted in his Brief in Support of Motion for Summary Judgment that the ALJ "erred in not considering all the testimony of the vocational expert. Dkt. No. 11 at 2. Baldwin did not point to any part of the

**Treating Physician Opinion**

Baldwin asserts that the ALJ improperly rejected the opinion from his treating physician, Dr. Kime, that he was incapable of working. In determining Baldwin's RFC, the ALJ considered Dr. Kime's opinion, but rejected it, finding it inconsistent with other evidence in the record, including Dr. Kime's own treatment records. R. 20. The ALJ gave greater weight to the opinions of the state agency reviewing physicians, who found Baldwin capable of performing a limited range of light work. R. 20.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010). Generally, whenever an ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to give specific

---

record or advance any legal claim in support of this argument, and thus, the court concludes that Baldwin has abandoned this claim.

reasons for the weight given to the treating physician's medical opinion and those reasons must be supported by the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

In this case, substantial evidence supports the ALJ's decision to reject the opinion of Dr. Kime, based upon the ALJ's finding that Dr. Kime's opinion is contrary to his treatment notes and the other medical evidence of record. The relevant medical evidence is briefly summarized as follows:

On July 17, 2002, Baldwin underwent a left L4-5 and L5-S1 hemilaminectory and disectomy, returned home and seemingly did well until October 10, 2008, when he injured his low back while hunting. R. 278. He saw Nurse Practitioner Landes at the Carilion Clinic the next day, who prescribed Vicodin, and ordered physical therapy. R. 304-09. Baldwin pursued a course of physical therapy for six weeks from October 14, 2008 through November 12, 2008, with no relief of his low back pain and radicular symptoms going down his left leg. R. 241 – 247. When the physical therapy was unhelpful, Landes ordered an MRI and referred Baldwin to Dr. Kime, an orthopedic surgeon. The MRI taken on November 7, 2012, revealed "diffuse lumbar spondylosis. The most significant level is at the L5-S1 [level] where there [was] a left posterolateral disc protrusion contacting the left S1 nerve root within the lateral recess." R. 261.

On December 10, 2008, Dr. Kime diagnosed Baldwin with degenerative disc disease from L4 through S1, with lesser degenerative disc disease from L2-3 and L3-4 levels. Baldwin also had a left disc protrusion at L5-S1 with moderate central canal stenosis, a small central disc protrusion at L4-5, moderate bilateral neuroforaminal narrowing at L4-5 and L5-S1 with significant disc space height loss, and left leg radiculopathy with a positive straight leg raise on the left. R. 278. Dr. Kime recommended lumbar epidural steroid injections, and noted that Baldwin will not be able to return to work as a truck driver until he is able to lift 50 pounds on a

regular basis, which would probably take a minimum of three months of healing after surgery. R. 279.

Baldwin underwent two lumbar epidural steroid injections, on December 16, 2008 and January 6, 2009. R. 273. He then reported back to Dr. Kime once every three to four months between January and August 2009. R. 269, 346-47, 343. During that time, Dr. Kime consistently assessed that Baldwin could walk on his tiptoes and heels, and was not unsteady on his feet. He was able to ambulate without aids, and walk up stairs. R. 273, 278, 343. 346.

Dr. Kime also consistently discussed with Baldwin whether to undergo further surgery. Dr. Kime noted his reluctance to recommend such surgery because of the possibility that Baldwin may not improve or may be worse after the surgery. R. 273. On January 14, 2009, Dr. Kime stated, "I have advised him that the prospect of doing additional surgery is quite risky. I cannot state that there is a greater than 50/50 chance that he will get better with surgery and there is probably just as much of a chance that he will be made worse by surgical intervention. He is certainly going to have some scar tissue from his previous surgery." R. 353.

Dr. Kime was also hesitant to pursue surgery because of Baldwin's smoking habit.[2] See R. 346 ("I have strongly advised [Baldwin] that if he were to consider any additional surgery, he would have to be completely stopped from smoking."). On multiple occasions, Dr. Kime recommended that Baldwin undergo a discogram, which would indicate whether spinal fusion surgery would likely alleviate Baldwin's pain. Baldwin, however, was hesitant to proceed with surgery out of fear that it will either be ineffective or exacerbate his pain. R. 346. A discogram is unnecessary if he is unwilling to undergo surgery. R. 343.

---

[2] Spinal fusion surgery is performed by placing a bone graft between two or more vertebrae, causing them to fuse or grow together. Nicotine negatively affects the ability of the bones to grow together. See generally Glassman, Steven D. et al., The Effect of Cigarette Smoking and Smoking Cessation on Spinal Fusion, 25 Spine 2608, 2615 (October 15, 2000).

7

On July 14, 2009, in response to a letter sent to him by Baldwin's counsel, Dr. Kime stated that Baldwin was unable to ambulate effectively, has to change position frequently, and has to lean forward to walk. Dr. Kime found that Baldwin was "unable to participate in any gainful employment." R. 339. About six weeks later, on August 25, 2009, Dr. Kime stated that Baldwin could not work, "unless he is able to find a light duty job, that does not involve more than 5 to 10 pounds of lifting." R. 343.

On November 16, 2009, state agency physician Luc Vinh, M.D., assessed that Baldwin was capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking about six hours in an eight hour workday, and unlimited pushing and pulling. R. 88. Dr. Vinh found that Baldwin could at least occasionally engage in postural limitations, except that he could not climb ropes or scaffolds. R. 88. Dr. Vinh's assessment was confirmed by state agency physician Williams Amos, M.D., on May 20, 2009. R. 77.

On November 18, 2009, Dr. Kime again recommended proceeding with a lumbar discogram to search for the source of Baldwin's pain. Dr. Kime noted Baldwin's anxiety with regard to surgery, and again encouraged him to stop smoking. R. 382. Baldwin returned over two months later to report that he did not have the funds for the discogram or the surgery. R. 380. With nothing left to do, Dr. Kime referred Baldwin to James R. Schwartz, M.D., for pain management. R. 380, 55. On April 2, 2010, Baldwin reported to Dr. Schwartz, who recommended an L5-S1 neural foraminal block and an S1 nerve root block, but noted that he would hold off on these because Baldwin was self-pay. R. 379.

On May 5, 2010, Dr. Kime provided a check list disability assessment finding that Baldwin is incapable of performing any work on a full time basis. R. 391. Dr. Kime provides no written explanation or reasoning for this opinion.

As noted above, based on the evidence in the record, the ALJ gave no weight to Dr. Kime's opinion that Baldwin is incapable of performing any work, finding that it is inconsistent with other credible evidence of record, including Baldwin's routine and conservative treatment and Dr. Kime's own treatment notes. The ALJ instead adopted the opinions of Drs. Vinh and Amos, finding them to be consistent with other credible evidence of record. R. 20. The ALJ accounted for Baldwin's severe degenerative disc disease and obesity by limiting him to a range of light work. R. 15.

Baldwin takes issue with the ALJ's characterization of his treatment as "routine and conservative." The medical evidence shows, and the ALJ acknowledged, that Baldwin suffers from a long history of low back pain which required surgery and medical management. Dr. Kime's records are clear that Baldwin's failure to receive additional surgery is not for lack of a medical condition or symptoms, but rather, because of risk that it would not improve his pain. Thus, Baldwin correctly asserts that he is "left to make do with conservative measures." Dkt. No. 11 at 6.

However, the record supports the ALJ's conclusion that these conservative measures have been fairly successful in alleviating Baldwin's pain. Baldwin's medication and treatment regimen has remained essentially unchanged since his injury in 2008. Baldwin began taking Hydrocodone soon after his injury, see R. 179, and his dosage remained at 500 mg pills as needed for over a year. See R. 308 (10-10-2008), 304 (10-13-2008), 302 (11-10-2008), 299 (2-9-2009), 292 (3-25-2009), 382 (11-18-2009; stating that Baldwin's Hydrocodone use continued).

Baldwin also stated on multiple occasions that the medication eased his pain, R. 168, 195, and he sometimes reported that he had not taken any pain medication. R. 343 (Baldwin reported to Dr. Kime that on some days, he does not take his pain medication at all), 382 (Baldwin reported taking no Hydrocodone in the past week). Given these records, the ALJ found that "medication was generally effective in controlling [Baldwin's] pain." R. 19. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530).

The record also supports the ALJ's finding that Dr. Kime's objective physical findings and treatment notes are inconsistent with his conclusion that Baldwin is incapable of any employment. While Dr. Kime's treatment notes contain objective physical findings of degenerative disc disease in Baldwin's low back, they do not document objective findings of disabling functional limitations arising from that medical condition. Dr. Kime's records consistently reflect that Baldwin maintained the ability to ambulate and walk on his heels and tiptoes without aids. R. 273, 278, 343, 380. These findings conflict with Dr. Kime's written notation on July 14, 2009 that Baldwin "cannot ambulate effectively." R. 339. Dr. Kime also noted that Baldwin has "some diffuse motor weakness on the left," but is able to forward flex to get his hands down to knee-level and is "able to do a double leg partial squat." R. 278, 346. These physical findings do not correlate with an inability to perform even a limited range of light work.

Baldwin's reported daily activities also undermine Dr. Kime's opinion that he has debilitating functional limitations. On his disability application, Baldwin reported that he was able to make meals, sweep the house, mow the yard, drive a car and shop for groceries. R. 205-

06. He further reported that he could walk up to half a mile without needing to take a rest, and lift up to ten pounds R. 185. These activities are inconsistent with an individual who experiences completely debilitating symptoms.

Additionally, Dr. Kime's opinions with regard to Baldwin's work capacity have been internally inconsistent. On numerous occasions, Kime checked a box on a form indicating that in his opinion, Baldwin could not work. See R. 277 (12-10-2008), 272 (1-14-2009), 268 (3-4-2009), 345 (5-6-2009), 342 (8-25-2009), 341 (8-31-2009), 381 (11-18-2009), 391 (5-5-2010). On July 14, 2009, in response to a letter from Baldwin's attorney, Dr. Kime stated that Baldwin is unable to participate in any type of gainful employment. R. 339. However, on August 25, 2009, less than two months later, Dr. Kime wrote in his treatment notes "I do not believe he can work, at least not in his present status, <u>unless he is able to find a light duty job, that does not involve more than 5 to 10 pounds of lifting</u>." R. 343 (emphasis added). This excerpt patently conflicts with Dr. Kime's opinions concerning Baldwin's inability to perform any work.

Finally, as the ALJ noted, the ultimate issue as to whether Baldwin is disabled is reserved to the Commissioner, and treating source statements as to these ultimate issues, in the words of the governing regulation, "are not medical opinions" under the Act. 20 C.F.R. § 404.1527(d)(1); see also Social Security Ruling ("SSR") 96-5p.

Given the evidence set forth above, there is substantial evidence in the record to support the ALJ's decision not to give Dr. Kime's opinion controlling weight, and to instead adopt the opinions of the state agency physicians in finding that Baldwin is capable of performing a limited range of light work.

**Pain and Credibility Determination**

Baldwin argues that the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from severe, disabling pain. At the administrative hearing, Baldwin testified that his daily pain level is at four to eight out of ten. He testified that he can sit for thirty minutes at a time without pain, stand for up to thirty minutes at a time without pain, and walk seventy five yards without pain. R. 34-35. Baldwin stated that he can lift about eight pounds and must lie down periodically throughout the day to relieve his pain. R. 41.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Baldwin's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Baldwin met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Baldwin's ability to work. Id. at 594-95.[3]

In this case, the ALJ recognized that Baldwin suffers from severe impairments that cause him to experience pain. As the ALJ noted in his opinion, the issue is not whether Baldwin has pain, but whether that pain is so severe as to be disabling. The ALJ found that Baldwin's statements regarding disabling pain are not entirely credible and are not supported by the degree of medical treatment he received, the findings made on examination, and the reports of the

---

[3] Baldwin argues that the ALJ erred by not giving a "detailed analysis" of the seven factors listed in 20 C.F.R. § 404.1529(c)(3), which describes the two-step process for evaluating reports of pain. Baldwin does not identify the source of the requirement that the ALJ give a "detailed analysis" to each of the seven factors in 20 C.F.R. § 404.1529(c)(3). The regulation itself merely requires that the ALJ "consider" the factors. Although a detailed analysis is not required, the ALJ did in fact conduct a detailed analysis of each of these factors. R. 15-20.

12

reviewing and treating physicians in the record. The ALJ included a detailed analysis of Baldwin's treatment records in his opinion in support of this conclusion.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Baldwin's testimony regarding his disabling pain is only partially credible, and that Baldwin is capable of performing a limited range of light work.

Baldwin's medical records do not corroborate his subjective allegations that his pain prevents him from performing even a limited range of light work. As noted above, Baldwin's treatment records do not contain objective findings of debilitating functional limitations. Furthermore, Baldwin's records reflect that his pain was largely controlled with medication.

Likewise, Baldwin's self-reported daily activities belie his assertion that he is incapable of performing any work. On his disability application, Baldwin reported that he was able to make meals, sweep the house, mow the yard, drive a car and shop for groceries. R. 205-06. He also stated that he could walk up to half mile without rest, and lift ten pounds. R. 185.

Additionally, the ALJ noted that Baldwin's statements about his physical activities were contradictory. For example, at the administrative hearing, Baldwin testified that, after his injury in 2008, he went hunting only once, and did not fire a rifle or shoot a deer. R. 42-43, 54. However, in an undated Function Report, Baldwin stated that he had been hunting five times since his injury. R. 184. In September 2009, Baldwin reported that he continued to hunt, albeit

on a "very limited" basis. R. 207. Additionally, Dr. Kime reported on January 27, 2010, that Baldwin had been hunting that winter "by basically sitting down against a log and was able to shoot a deer. His father was able to retrieve the deer on a four wheeler . . ." R. 380. Baldwin's credibility is eroded by these inconsistent statements about his physical activity.

The ALJ does not assert that Baldwin is pain free. On the contrary, the ALJ recognizes that Baldwin suffers from severe conditions that limit his ability to function. The issue, however, is not whether Baldwin has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the light jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). The ALJ accounted for the limitations posed by Baldwin's impairments by limiting him to light work. The ALJ also restricted Baldwin's ability to climb ladders, ropes and scaffolds, and instructed that he avoid concentrated exposure to dangerous machinery or unprotected heights.

Baldwin's appeal essentially asks the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). Furthermore, credibility

14

determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence, and should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

## Conclusion

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Baldwin is totally free from any pain or distress. The record simply fails to support his assertion that he is incapable of performing all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Baldwin's claim for benefits and in determining that his physical impairments would not prevent him from performing all available work. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Baldwin's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

15

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: August 30, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge